UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00610-WYD

WAYNE R. ARCHER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33 and 1380-83.  For the reasons stated below, this case is reversed and remanded for further factfinding.

Plaintiff was born in December 1982 and is currently 27 years old.  (Transcript ["Tr."] 53.)  He worked in the past as a bouncer, retail sales clerk, and fast food worker.  (*Id.* at 58, 74-77.)  Plaintiff alleges that he became disabled on August 30, 2004, when he was 21 years old because of "psychiatric illness and schizophrenia".  (*Id.* at 53, 57.)

Plaintiff's claim was denied initially on January 25, 2006.  (Tr. 44-46.)  Plaintiff requested a hearing, and a hearing was held on June 27, 2007 before an Administrative Law Judge ["ALJ"].  (*Id.* 251-276.)  In a decision dated September 13, 2007, the ALJ

concluded that Plaintiff was not disabled within the meaning of the Act. (*Id.* 13-29.) This decision is discussed in more detail below. The Appeals Council declined review of the ALJ's decision (*id.* 4-6), and this appeal followed. The ALJ's decision is the final administrative decision, and this case is ripe for judicial review.

II.   ANALYSIS

    A.   <u>The ALJ's Decision</u>

The ALJ found at step one that Plaintiff's insured status would extend through September 30, 2009. (Tr. 18.) She further found that Plaintiff had not engaged in substantial gainful activity since August 30, 2004, his alleged onset date. (*Id.*)

At step two, the ALJ found that Plaintiff had the following "severe" impairments: "schizophrenia and cannabis abuse". (Tr. 18.) At step three, however, she found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19.)

Based on all of the impairments, including the substance use disorder, the ALJ found that Plaintiff has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: "a poor ability to understand, remember and carry out simple job instructions; a poor ability to make simple, work related decisions; no ability to understand, remember and carry out complex job instructions; no ability to make decisions on complex, work related decisions; no ability to interact with the public, supervisors or coworkers; and no ability to respond appropriately [to] usual work situations or changes in the work routine." (Tr. 20.) Significant weight was given to the opinion of evaluating psychiatrist Dr. Martin Wong (Exhibit 9F), to the extent that the limitations were caused by Plaintiff's use of

marijuana. (*Id.* at 20.) Also, Plaintiff was found to be credible concerning the following symptoms and limitations: "when he abuses marijuana he experiences hallucinations, paranoia, decreased concentration and fatigue." (*Id.*)

Based on this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work when abusing marijuana. (Tr. 24-25.) She further found after considering Plaintiff's age, high school education, non-transferable job skills and "all of his impairments, including the substance use disorder" that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* 25.) In making this conclusion, she relied on the testimony of the vocational expert that she had obtained at the hearing. (*Id.*)

The ALJ then determined the impact of Plaintiff's impairments if he stopped the substance abuse. (Tr. 26-29). She found that if Plaintiff stopped the substance abuse, he would continue to have a severe impairment or impairments. (*Id.* 26.) However, "[he] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) She reached that conclusion by asserting that he is able to work, play music, be upbeat and positive, play video games, clean dishes, use public transportation, read books and have "normal thought processes". (*Id.*) She cited three (3) medical reports: Michael Dow's progress note for February 1, 2005 (Ex. 2F, Tr. 187); Dr. Martin Wong's consultative examination of January 10, 2006 (Ex. 3F, Tr. 194-197) and Exhibit 1F, p.3. (*Id.* 26.)

The ALJ found that "the record describes only a mild restriction of activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in

-3-

maintaining concentration, persistence and pace." (Tr. 26.)  She also found that there have not been repeated episodes of decompensation described in the record when Plaintiff is not abusing marijuana. (*Id.*)  Thus, she found that the criteria of Section 12.03 of 20 C.F.R. Part 404, Subpt. P, App. 1 were not satisfied. (*Id.*)  From this, the ALJ found that "[i]f the claimant stopped the substance use, [he] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  a fair ability to relate to coworkers, deal with the public, and deal with work stress; and a fair ability to understand, remember and carry out complex and detailed job instructions." (*Id.*)  The word "fair" was defined as limited but satisfactory. (*Id.*)

In reaching this RFC, the ALJ noted that the medical evidence indicated "a period from late 2004 through 2006 when the claimant did not regularly abuse marijuana." (Tr. at 28.)  Citing similar evidence to that upon which she had relied earlier, the ALJ asserted that Archer was noted to be "stable at work and home" (on December 14, 2004, Ex. 2F, Tr. 189), "doing well" (on January 5, February 1, March 31, and October 14, 2005, Ex. 2F, Tr. 184, 186-188]), and "upbeat and positive" (miscited as "Exhibit 1F, page 3"). (*Id.* 28.)  Finally, the ALJ referenced Dr. Martin Wong's consultative examination of January 10, 2006 as evidence that "[Archer] was clean and fairly groomed, oriented in all spheres, and [his] psychomotor activity was normal." *Id.* (citing Ex. 3F).  In addition, she noted that "[t]he evaluating psychiatrist felt that the claimant's symptoms were only at a minimal level, and that he would be able to work at an occupation requiring minimal intellectual capability and stress. (Tr. 28.)  Based on these citations, the ALJ concluded that "when the claimant stops abusing drugs, he functions

[at] a relatively normal level, with minimal psychiatric symptoms.  Therefore, significant weight is given to the opinion of Dr. [Martin] Wong" (Tr. 28.)  The ALJ did not adopt the moderate restrictions set forth by the non-examining state agency psychiatrist when Plaintiff is not doing drugs, as Plaintiff "clearly is able to interact with others, work part time, play video games, and perform activities of daily living."  (*Id.*)

Addressing Archer's 2004 hospitalizations, the ALJ noted that they occurred when Archer "was heavily abusing marijuana" in August and November of that year.  (*Id.*)  She noted that Plaintiff also uses psychedelic drugs, and that his treating physician noted in August 2004 that his substance abuse was a "major obstacle" to his successful functioning.  (*Id.*, citing Ex. 1F p. 60).  She also found that by Plaintiff's own admission, his depression, anxiety and paranoia increase when he uses marijuana.  (*Id.*)  The ALJ further referred to Plaintiff's non-compliance with medication and treatment, without citations to the record.  (*Id.*)

The ALJ rejected Dr. Jean-Marc Wong's Medical Source Statement, despite his being Archer's "treating physician," because she found that "the limitations set forth therein are associated with the claimant's abuse of marijuana." (*Id.*)  She further noted that this Dr. Wong had seen Archer only three times, and that Archer had resumed the use of marijuana at his last examination in 2007.  (*Id.*, citing Tr. 233-237.)

Turning to the written statements of Archer's parents (tr. 105-109) and his father's testimony at the hearing (*id.* 266-272), the ALJ gave that evidence "reduced weight, as they are not supported by the objective medical evidence which indicates that the claimant's condition improves dramatically when he stops abusing marijuana."  (Tr. 28.)  She also noted that Archer received financial assistance from his father, so

that "his father stands to gain financially should the claimant be found disabled. Finally, given the close relationship, it is possible that his parents were influenced by their desire to help the claimant." (*Id.* 28-29.)

The ALJ then proceeded to determine that, "[i]f the claimant stopped the substance use, [he] would be able to perform past relevant work as a retail sales clerk and fast food worker." (Tr. 29.) "This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use", citing the vocational expert's response to her first hypothetical question at the hearing. (Tr. 29, referring to 273-274.)

In conclusion, the ALJ pronounced that, "[b]ecause [Archer] would not be disabled if he stopped the substance use (20 CFR 404.1520(f) and 416.920(f), [his] substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." (Tr. 29.)

    B.    <u>Standard of Review</u>

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

### C. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ's finding that his substance abuse is a contributing factor material to his disability is not supported by substantial evidence. Plaintiff also argues that the ALJ did not properly consider Plaintiff's schizophrenia in the disability decision. Finally, Plaintiff argues that the ALJ erred in failing to consider the lay testimony of Plaintiff's father. I address these arguments below.

#### 1. Whether the ALJ Failed to Properly Consider Plaintiff's Schizophrenia

I first address the ALJ's finding at step three that if Plaintiff stopped substance abuse, he would not have an impairment or impairments that met the Listings. (Tr. 26.) I find that the ALJ erred at this step of the analysis. The ALJ did not discuss or even reference Plaintiff's schizophrenia or discuss why the evidence in the record regarding Plaintiff's schizophrenia failed to meet the requirements of Listing 12.03. (*Id.*) The Tenth Circuit has found it to be error when the ALJ does not discuss the evidence he or

she accepts or rejects with respect to the requirements of the Listings. *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

An ALJ also errs when he or she makes a bare conclusion which "'is beyond meaningful judicial review.'" *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). In this case, the ALJ made such a bare conclusion when she found that Plaintiff had only mild to moderate difficulties because the record showed he could work, play music, was noted to be upbeat and positive, socialized with friends, played video games, cleaned dishes, used public transportation, read books and had normal thought processes. The fact that Plaintiff worked part time during this period of time or that he socialized with friends or engaged in activities as described above does not translate into findings that are relevant to the Listings or to the ALJ's findings that Plaintiff had only mild to moderate difficulties. The ALJ reached an improper medical conclusion based on selected references in the record, and not from any medical diagnoses or opinions about Plaintiff's condition. Moreover, the Tenth Circuit has made clear that sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). That holding also implies that sporadic diversions do not establish whether a person's impairments meet the Listings.

Further, there was evidence in the record during this period that the ALJ ignored which showed that the schizophrenia was more severe than noted by the ALJ and which could satisfy certain Listing requirements. *See* Tr. 113-14 ("grandiose delusions"), 114 ("people trying to kill him"), 117 ("flat affect"), 118 ("grandiose & paranoid delusions"), 119 ("bizarre behavior") (all of which occurred before November

30, 2006), as well as similar entries on and before March 30, 2007, a period of lesser and/or no marijuana usage. An ALJ errs when the record is selectively applied. *See Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) (unpublished).[1] The treating physician's Medical Source Statement was also not properly evaluated, as discussed below, which is relevant to the Listings.

Based on the foregoing, I find that the ALJ's decision that if Plaintiff stopped substance abuse he would not have an impairment or impairments that met the Listings is not supported by substantial evidence. This case must be remanded so that a proper evaluation is made.[2]

### 2.  Whether the ALJ Erred in Determining that Plaintiff's Substance Abuse is a Contributing Factor Material to His Disability

I next address the argument that the ALJ's finding that Plaintiff's substance abuse is a contributing factor material to his disability is not supported by substantial evidence. The Commissioner argues in response that the ALJ properly assessed Plaintiff's drug and alcohol abuse, and that the record supported the ALJ's finding that Plaintiff, absent drug and alcohol abuse, retained the RFC to perform a limited range of unskilled work. I disagree as to that issue, finding the record was unclear and that the

---

[1] Citations to this and other unpublished opinions in this Order are made because I find that the opinions have persuasive value with respect to a material issue that has not been addressed in a published opinion.

[2] The Commissioner argues that the ALJ's decision at this step is supported by the opinion of Dr. Dye, the nonexamining state agency psychiatrist. However, the ALJ did not cited his opinion as a basis for her decision. Thus, this argument does not provide a basis to affirm the ALJ's decision. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance; judicial review is limited to the reasons stated in the ALJ's decision).

ALJ made improper assumptions which are not necessarily supported by the record. Accordingly, I find that a remand is also appropriate on this issue for the reasons discussed below.

Congress has amended the Social Security Act to provide that "'[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Drapeau*, 255 F.3d at 1214 (quoting 42 U.S.C. § 423(d)(2)(C)); *see also* 20 C.F.R. § 404.1535. "Under the regulations, the key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Id.* (citing 20 C.F.R. § 416.935(b)(1)). The ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol and/or drugs, and then determine whether any or all of plaintiff's remaining limitations would be disabling. *Id.*

In *Drapeau*, the Tenth Circuit found that the ALJ's analysis of plaintiff's alcohol abuse was flawed because "the ALJ failed to determine whether plaintiff was disabled prior to finding that alcoholism was a contributing factor material thereto." *Id.* "The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)." *Id.* (citing 20 C.F.R. § 416.935(a)). The ALJ "must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs." *Id.* (citing 20 C.F.R. § 416.935(b)(1)). If the claimant would still be found disabled if he or she stopped using drugs or alcohol, "then

the alcohol [or drug] abuse is not a contributing factor material to the finding of disability." *Id.* at 1214-1215. "If, however, the claimant's remaining impairments would not be disabling without the alcohol abuse, then the alcohol abuse is a contributing factor material to the finding of disability." *Id.* at 1215 (citing 20 C.F.R. § 416.935(b)(2)(i)). Finally, the Tenth Circuit indicated that pursuant to a teletype from the Social Security Administration, "[w]hen it is not possible to separate the mental restrictions and limitations [imposed by drug and alcohol abuse] and the various other mental disorders shown by the record, a finding of 'not material' would be appropriate." *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002).

In this case, as discussed previously, the ALJ found that Plaintiff was unable to perform any past relevant work when abusing marijuana. I find no error with this analysis, and Plaintiff has not alleged any. Accordingly, I turn to the ALJ's determination as to whether Plaintiff would still be disabled if he stopped his substance abuse.

As discussed previously, the ALJ found that if Plaintiff stopped the substance use, he would have the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "a fair ability to relate to coworkers, deal with the public, and deal with work stress; and a fair ability to understand, remember and carry out complex and detailed job instructions." (Tr. 26.) The word "fair" was defined as limited but satisfactory. (*Id.*) The ALJ further found that "when the claimant stops abusing drugs, he functions [at] a relatively normal level, with minimal psychiatric symptoms" and gave significant weight to the opinion of Dr. Martin Wong. (Tr. 28.)

Turning to my analysis of the above findings, I first note that the ALJ did not specify what particular medical evidence supported her RFC.  While she cited to the report of evaluating psychiatrist Dr. Martin Wong, he did not express a specific opinion regarding Plaintiff's RFC.  Since I am unable to determine what evidence the ALJ relied on in connection with the RFC, a remand is appropriate on this issue.  *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. 2005) (unpublished).

The ALJ concluded that if Plaintiff stopped the substance use, he "would be able to perform past relevant work as a retail sales clerk and fast food worker", relying on the vocational expert's response to the first hypothetical question at the hearing.  (Tr. 29, referring to 273-74.)  Thus, the ALJ found that Plaintiff would not be disabled if he stopped the substance use, and that his substance use disorder is a contributing factor material to the determination of disability.  (*Id.*)

In making the above findings, the ALJ relied heavily on the report of consultative examiner Dr. Martin Wong as noted above and chose to give no weight to moderate restrictions found by a non-examining state agency opinion.  Both of these reports occurred during periods in 2006 when Plaintiff was allegedly not abusing drugs.  I find error with the ALJ's analysis.  First, as noted above, Dr. Martin Wong did not make a RFC assessment.  Second, while Dr. Martin Wong stated in the "Clinical Functional Assessment" portion of his report that it "would seem that Plaintiff would be able to work at some occupations requiring minimal intellectual capability and causing minimal stress", he made clear in the Recommendation section that there was no way to know if Plaintiff's relative stability would continue once the effect of the Risperdal ameliorated and stress built up.  (Tr. 197.)  The ALJ ignored this, instead selectively applying the

portion of the report that supported her opinion.  This was error.  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004) (unpublished) ("The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability").

As to the nonexamining state agency opinion finding moderate restrictions two months after Dr. Martin Wong's opinion, the ALJ gave no weight to this portion of the report (and improperly did not discuss what weight she was giving to the remainder of the report).  The only basis for her decision not to give weight to the restrictions found in the report was her finding that Plaintiff "clearly is able to interact with others, work part time, play video games, and perform activities of daily living."  (Tr. 28).  I find that the ALJ is improperly speculating that Plaintiff's ability to work part time during a period of time and to perform certain activities of daily living means that he is functioning "at a relatively normal level, with minimal psychiatric symptoms."  (*Id.*)  As noted earlier, sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).  They also do not establish that a person is functioning with minimal psychiatric symptoms.  The ALJ was making an improper medical judgment about this issue.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (generally, an ALJ is not entitled to substitute his or her own medical judgment for that of mental health professionals).  Further, these type of activities do not provide a basis to discount medical findings made by a medical source.  Finally, the opinion of the nonexamining state agency physician (and Dr. Jean-Martin Wong discussed below) could be construed to mean that Dr. Martin Wong's

statement that Plaintiff's relative stability might not continue in the future was accurate. This is something that should be considered by the ALJ on remand.

I also find error with the ALJ's treatment of treating physician Dr. Jean-Marc Wong's Medical Source Statement, which described much more significant restrictions. (Tr. 233-24.)  First, the ALJ did not actually state what weight she was giving to this Statement, which is error.  The Tenth Circuit has made clear that "'an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'"  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

Second, while the ALJ found that the limitations set forth in the report "are associated with the claimant's abuse of marijuana" (Tr. 28), there is nothing in Dr. Jean-Marc Wong's Statement that specifically supports this.  Instead, Dr. Wong's Statement is not clear on the issue of whether the impairments he noted were caused by substance abuse, Plaintiff's mental impairments, or some combination of both.  Indeed, one factor that supported his assessment was his finding that Plaintiff was psychotic (*id.* 233), which could be attributable to either the mental illness or the substance abuse. Further, his primary diagnosis for Plaintiff was schizophrenia, not substance abuse. (*Id.* 227, 224).

While Dr. Jean-Marc Wong noted that Plaintiff's "MJ" (which I interpret to mean marijuana use) "may be exacerbating his underlying schizophrenia (chronic paranoid)" (*id.*), again this does not explain whether the impairments noted by Dr. Wong were due

-14-

to the underlying mental illness or the mental illness as exacerbated by marijuana use. It was error for the ALJ to assume from Dr. Jean-Marc Wong's Statement that he believed that the impairments were caused only by the marijuana abuse. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*") (emphasis in original) (quotation omitted). If the record were unclear on this issue, the ALJ had a duty to contact Dr. Wong to obtain clarification of the issue. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

Further, when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1994). The ALJ did not appear to follow that rule in this case. Finally, the ALJ's decision showed that she considered only one of the relevant factors that must be considered in deciding what weight to give a treating physician's opinion; namely, how many times the Plaintiff saw this doctor. She did not show that she considered the other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)-(6)). Accordingly, I find that the ALJ's decisions regarding Dr. Jean-Martin Wong's opinions are not supported by substantial evidence. This is particularly significant since the vocational expert opined that even without the substance abuse, if Plaintiff had the more significant nonexertional impairments found by Dr. Wong he would not be able to perform any

work.  (Tr. 274-75.)  Accordingly, the medical evidence must be properly weighed on remand.

Plaintiff also argues that the ALJ failed to evaluate correctly Plaintiff's mental health during his periods of abstinence from cannabis, as required by 20 C.F.R. §§ 404.1535 and 416.935.  He details the periods of abstinence (and of lessened marijuana use), which he asserts could have continued through March 2007 when he told Dr. Mean-Marc Wong that he had not used marijuana in three to four months.  (Tr. 226.)[3]  I first agree with Plaintiff that the ALJ should have discussed how she came up with the dates for Plaintiff's nonuse of substances, and why this date ended in 2006, as compared to 2007.

Second, I find that the ALJ did not compare in any depth Plaintiff's mental impairments during his periods of heavy marijuana use and during his periods of little or no use.  Instead, she found that Plaintiff had no more than "fair" limitations when he was not smoking marijuana and extreme limitations when he was using cannabis.  I agree with Plaintiff that these findings were without sufficient support in the medical evidence to justify her determination of those limitations, were based on a selective application of the evidence, and/or were based on improper speculation based on Plaintiff's activities, as discussed previously.  Accordingly, I find that on remand, the ALJ must conduct a proper evaluation from the medical evidence as to Plaintiff's impairments during his periods of heavy substance abuse and no substance abuse.

---

[3] The ALJ did not discuss this note from Dr. Wong, finding only that there was a period from late 2004 through 2006 when Plaintiff did not regularly abuse marijuana.

### 3. Whether the ALJ Erred in Failing to Properly Consider the Lay Testimony of Plaintiff's Father

Finally, I address Plaintiff's argument that the ALJ erred in failing to adequately consider the lay testimony of his father, Randy Archer. The ALJ stated that she gave Randy Archer's testimony "reduced weight," but appeared to give it no weight. The decision should have been clear as to what weight, if any, was given to the testimony of Mr. Archer, which must be corrected on remand.

Turning to the merits of this issue, the ALJ gave three reasons for her decision regarding Randy Archer: (1) his testimony was not supported by the objective medical evidence which indicates that the claimant's condition improves dramatically when he stops abusing marijuana; (2) Archer receives financial help from his father, so that the father stands to gain financially; and (3) "given the close relationship, it is possible that his parents were influenced by their desire to help the claimant". I find that the ALJ did not properly consider Mr. Archer's testimony. First, since I previously found that the ALJ did not properly weigh the medical testimony, including evidence during the period of time that Plaintiff was not using marijuana, I find that the first reason given by the ALJ is not supported by substantial evidence.

Second, I must view the ALJ's other reasons given for finding Plaintiff's father not to be credible with skepticism. The ALJ's reasons appear to conflict with the duty of the ALJ to consider testimony of parents and other impairments to show the severity of a claimant's impairments and how it affects his ability to work. 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4); *see also* SSR 85-16 ("relevant, reliable information, obtained from ... family members ... may be valuable in assessing" whether

a mental impairment is disabling).  The ALJ's findings would appear to make any parent not credible who is testifying, which certainly seems contrary to the above regulations and rulings.  *See also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (a credible determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

Further, the ALJ never mentioned any of the particulars of Randy Archer's testimony.  He supported his son's disability claim by submitting two written statements and by testifying at the hearing.  One of his written statements was a journal dated June 26, 2007 but written mainly about the period from early June to late September 2005, describing his son's delusions and medications during this time.  (Tr. 105-107.)  The other statement was identified as "Wayne's symptoms, as observed by his father and mother," dated December 6, 2004.  It listed 26 "long-term symptoms, four years or more (since high school)," and ten "occasional, transitory symptoms."  (*Id.* 108-109.)  In his testimony at the hearing, Randy Archer recalled that Dr. Martin Wong saw his son at a time when he was doing better but that he had deteriorated since then.  (*Id.* 267-272.)  Randy Archer's testimony largely supports the findings of treating physician Dr. Jean-Marc Wong, which the ALJ failed to consider.  Further, the ALJ failed to reference this testimony or discuss whether any weight was given to it.

Finally, I agree with Plaintiff that the case relied on by the ALJ in discounting Randy Archer's testimony does not support this decision.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993) appears in fact to hold the opposite of what the ALJ intended.  In *Dodrill*, the ALJ dismissed all the lay witness testimony solely because he found the claimant was not credible.  The Ninth Circuit found that friends and family members in a

position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Id.* at 918-19. "'Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Id.* at 918 (quoting 20 C.F.R. § 404.1513(e)(2)). Based on the foregoing, I find that the ALJ's decision to discount Randy Archer's testimony is not supported by substantial evidence. The ALJ must conduct a new credibility assessment of Randy Archer's testimony on remand.

III.     CONCLUSION

Based upon the errors described above, I find that this case must be reversed and remanded to the Commissioner for further fact finding and analysis consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

Dated July 6, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge